BRUNO et al., Appellants,

v.

STRUKTOL COMPANY OF AMERICA et al., Appellees.

[Cite as *Bruno v. Struktol Co. of America* (1991) 62 Ohio App.3d 509.]

Court of Appeals of Ohio,
Summit County.

No. 14560.

Decided Jan. 31, 1991.

*Sindell, Lowe & Guidubaldi Co., L.P.A.,* and *Steven A. Sindell,* for appellants.

*Amer Cunningham Brennan Co., L.P.A., Richard T. Cunningham, Nickolas P. Andreeff* and *Timothy H. Hanna,* for appellees.

CIRIGLIANO, Judge.

This cause is before the court upon the appeal of Dr. Guenter Bruno and Craig Fitch from the trial court's order granting summary judgment in favor of Struktol Company of America et al. ("Struktol") on plaintiffs' cause of action for wrongful termination of an employment relationship. For the following reasons, we reverse the trial court's judgment.

### Facts

Appellant Dr. Bruno has been a chemist for many years, employed at a number of companies prior to his employment with Struktol. His last employment prior to Struktol had been with Witco Corporation from September 1985 until June 1986 when he was laid off due to the company's reorganization and reduction in force. Dr. Bruno immediately began searching for new employment.

His search culminated in a first interview on June 25, 1986 with Hans Kirchhoff, Struktol's president, for the position of Research and Development Manager. On June 27, 1986, Dr. Bruno returned for a second interview with Kirchhoff. At this second interview specific job responsibilities were discussed as well as Dr. Bruno's concerns about job security due to his age. It was also at the second meeting that the parties discussed the possibility of hiring a laboratory assistant. The interview concluded when Dr. Bruno felt he had received the necessary assurances from Kirchhoff. However, there was no formal employment agreement reached at this time.

Sometime between June 28, 1986 and July 1, 1986, H.J. Bennett, vice president for operations for Struktol, telephoned Dr. Bruno and during the conversation, Struktol, through Bennett, offered the job to Dr. Bruno. Dr. Bruno requested that a formal letter be sent to him confirming the offer and Struktol complied. Dr. Bruno began work at Struktol on July 7, 1986 for a salary less than he earned at his previous employment. He remained employed at Struktol until his termination date of August 24, 1988.

Appellant Fitch's factual circumstances parallel those of Dr. Bruno. Fitch had been a laboratory assistant at Diamond Shamrock where he had known Dr. Bruno. After leaving Diamond Shamrock, Fitch commenced his own home remodeling business. As stated, it was during Dr. Bruno's second interview that the eventual need for a laboratory assistant was first contemplated. Thereafter, one of the laboratory assistants at Struktol left the company creating an immediate opening in late 1986. Dr. Bruno, who had complete discretion in hiring a laboratory assistant, contacted Fitch.

Fitch at first was reluctant to abandon his efforts at succeeding in his own business, but after several discussions with Dr. Bruno in which Dr. Bruno relayed to Finch the job assurances given to him, Fitch accepted employment at a salary slightly higher than he received while employed at Diamond Shamrock. Fitch began employment in late 1986 and was terminated on the same day as Dr. Bruno, August 24, 1988.

Dr. Bruno and Finch jointly filed suit for wrongful termination claiming a contract for employment, expressed or implied, and a contract of employment based upon promissory estoppel. By agreement of the parties discovery was limited to the issue of whether plaintiffs were employees-at-will or whether they were employed under promises of continued employment. Struktol filed a motion for summary judgment and after oral arguments the trial court granted Struktol's motion on March 21, 1990. The trial court found no dispute of material facts which would give rise to the application of promissory estoppel as an exception to the employment-at-will doctrine.

Dr. Bruno and Fitch appeal, presenting the following assignments of error.

### Assignments of Error

"I. It is reversible error on a motion for summary judgment for the trial court to view the facts other than in a light most favorable to the opposing party.

"II. Where in a pre-employment interview, the prospective employee, a 58 year old chemist, is promised by the president of the company that with satisfactory performance he will have a job until age 65, and where that employee emphasizes to the president that job security is of primary importance and accepts a lower starting salary, and where that employee relies on that promise of the president to his detriment, ceases further job hunting and accepts employment, and where that employee who has performed well is suddenly terminated without cause approximately two years later, a cause of action for promissory estoppel has been established and it is reversible error for the trial court to grant summary judgment to the defendant-employer.

"III. Where the president of the company authorizes a chemist employee to hire a lab assistant and to work out the conditions of employment with that assistant, and where that chemist employee thereafter hires a lab assistant promising continuing employment with satisfactory performance until the chemist employee reaches age 65, and where that lab assistant relies on that promise to his detriment, accepts a lower salary and relinquishes another business venture in accepting employment as a lab assistant, and where that lab assistant who has performed well is suddenly terminated without cause approximately a year and one-half later, a cause of action for promissory estoppel has been established and it is reversible error for the trial court to grant summary judgment to the defendant-employer."

■ Our scope of review is conducted within the framework of a summary judgment analysis. The grant of summary judgment is appropriate only upon the demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Civ.R. 56(C).

■ Our focus is centered upon appellants' claim that there exists a clear dispute of facts regarding detrimental reliance based upon specific promises made by the employer to the employee. A showing of detrimental reliance by an employee based upon specific promises made by the employer may give

rise to an exception to the employment-at-will doctrine. *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus.

As was the case in *Helmick, supra,* it is the trial court's, and, in light of the standard of review, this court's responsibility to consider the whole of the evidence, construing it in a light most favorable to the appellants and to determine whether or not specific promises were made to Dr. Bruno and Fitch upon which they detrimentally relied. *Id.* at 136–137, 543 N.E.2d at 1217. The test for determining whether detrimental reliance will operate as an exception to the employment-at-will doctrine is " * * * whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph three of the syllabus.

We find that Dr. Bruno and Fitch have met their burden of coming forward with evidence showing that there was a genuine issue for trial on the theory of wrongful discharge. Dr. Bruno's testimony that at the second interview with Struktol's president Kirchhoff certain promises and assurances were made concerning job security is sufficient to defeat the motion for summary judgment.

Specifically, Dr. Bruno testified at the summary judgment hearing that he expressed a sincere concern for job security because he was fifty-eight years old. Dr. Bruno's testimony is that Kirchhoff responded that with satisfactory job performance he would be employed with Struktol until the retirement age of sixty-five and that this would be his last employment. With these assurances in mind, Dr. Bruno ceased all other job searches, accepted employment with Struktol at a lesser salary than his previous employment, and rejected all other employment inquiries he received after starting employment with Struktol. Additionally, in the employment confirmation letter, Struktol's vice president of operations confirmed that Dr. Bruno's employment with Struktol would provide a "long lasting relationship."

It was with these promises and assurances that Dr. Bruno approached Fitch regarding employment as a laboratory assistant. In their first meeting, Dr. Bruno informed Fitch that he had been given complete authority by Struktol to hire a laboratory assistant. Fitch immediately made clear his reservations about his own job security. Dr. Bruno then relayed to Fitch the assurances given to him by Struktol's president that he expected to remain Research and Development Manager until his retirement age. Fitch then accepted employment with the understanding that his job as laboratory assistant would be

secure at least until Dr. Bruno's retirement. In doing so, Fitch abandoned his remodeling business, which included recent significant expenditures on equipment, advertisement, and labor.

We do not present this evidence in order to establish appellants' case for wrongful discharge but merely to expose the underlying factual disputes and to demonstrate that summary judgment was inappropriate under the standards set forth.

We disagree with the trial court's reasoning in granting summary judgment in this case when comparing these facts with those in *Helmick, supra,* in which the Supreme Court of Ohio held that summary judgment was not proper. The trial court held that since *Helmick* involved promises and assurances given to employees *after* commencing employment, such promises gave rise to questions of fact as to whether promissory estoppel applied. The trial court then distinguished the *Helmick* case from the present case in that the alleged promises made to Dr. Bruno and Fitch were made *prior* to their employment with Struktol. In essence, the trial court concluded that when promises are made by an employer prior to one's employment there can be no promissory estoppel as a matter of law. We find no authority making such a distinction.

Further, this court recently applied *Helmick, supra,* to a specific factual circumstance in *Modarelli v. First Fed. S. & L. Assn. of Wooster* (June 6, 1990), Wayne App. No. 2529, unreported, 1990 WL 77124. In *Modarelli, supra,* this court found that summary judgment was properly granted against an employee where the trial court found that the employee could not remember the precise words, but he implied and assumed a promise of continued employment because his job, pay increases, and promotions were based upon job performance, and therefore he would not be fired except for cause. This court concluded that the rather nebulous representations made by the employer were insufficient to induce any action or forbearance by the employee. *Id.* at 9.

Unlike *Modarelli, supra,* there is some evidence in the present case of specific promises and detrimental reliance. At the very least the testimony presented creates a question of fact on the subject of detrimental reliance for determination by a jury. Accordingly, appellants' assignments of error one, two, and three are well-taken.

### Assignment of Error IV

"Where an at-will employee is terminated for a reason prohibited by the public policy of the State of Ohio as expressed in a statutory enactment, a cause of action exist [sic] against the employer for wrongful termination

pursuant to the recent decision of the Ohio Supreme Court in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228 [551 N.E.2d 981]."

In paragraph ten of appellants' complaint, allegations are stated regarding issues involving possible punitive damages by setting forth alleged motives for Struktol in terminating the employment relationships. This paragraph states:

"The aforementioned wrongful actions of Defendants and each of them with respect to Plaintiffs Craig Finch and Guenter Bruno included Defendants requesting Plaintiffs to wrongfully certify and misrepresent that certain antifoam and other products complied with applicable regulations and requirements of the Federal Food and Drug Administration when, in fact, these products were not in such compliance, a fact known to Defendants. Plaintiffs both refused to so certify these products, contrary to the demands upon them of Defendants to so wrongfully certify same. Moreover, the wrongful actions of these Defendants towards these Plaintiffs also included requiring these Plaintiffs to remain silent and also to affirmatively misrepresent that certain products complied with Jewish Kosher requirements when in fact these products did not so comply, notwithstanding the fact the Defendants were fully aware of such noncompliance and engaged in a deceptive, fraudulent scheme of misrepresentation to obtain from Rabbinical Certification sources a kosher certification for said products, which in fact was wrongfully and illegally obtained by Defendants. Defendants were motivated to and did in fact punish Plaintiffs Guenter Bruno and Craig Finch and acted illegally towards them as aforementioned for these specific reasons (as well as other reasons) involving Jewish Kosher Laws and Federal Food and Drug Administration regulations and requirements as set forth herein above."

Since the summary judgment proceedings were restricted to the determination of appellants' employment status, the trial court never addressed the allegation set forth in this paragraph of the complaint. In fact, the parties had no opportunity to conduct discovery on these issues. Therefore, we need not rule on this assignment of error because the trial court's ruling precluded its consideration. Accordingly, this assignment of error is overruled.

In light of our holding that the trial court improperly granted summary judgment, we reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

REECE, P.J., and BAIRD, J., concur.