PENWELL, Appellant,

v.

AMHERST HOSPITAL et al., Appellees.

[Cite as *Penwell v. Amherst Hosp.* (1992), 84 Ohio App.3d 16.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005324.

Decided Nov. 25, 1992.

*Robert A. Kish,* for appellant.

*Daniel D. Mason,* for appellees.

REECE, Judge.

This cause is before the court upon the appeal of plaintiff-appellant, Ruth A. Penwell, from a grant of summary judgment in favor of the defendants-appellees, Amherst Hospital and Amherst Hospital Association (hereinafter referred to

collectively as "Amherst Hospital"), on appellant's cause of action for wrongful termination of an employment relationship and intentional infliction of emotional distress.

Appellant was employed by Amherst Hospital from January 1971 until her involuntary termination in August 1990. At the time of her hiring Penwell was eighteen years of age and a recent high school graduate. While assigned to various departments during her employment, Penwell always held clerical or secretarial positions. In February 1990, Penwell began reporting to Jamie Haack, the newly hired director of the Human Resources Department. On May 3, 1990, in a written evaluation, Haack rated Penwell's job performance as unsatisfactory. This evaluation warned Penwell that termination could result if her performance did not improve over the following ninety days. On August 9, 1990, Amherst Hospital, upon Haack's recommendation, terminated Penwell's employment.

Penwell commenced this lawsuit on December 18, 1990, alleging wrongful discharge and intentional infliction of emotional distress. Following discovery, Amherst Hospital moved for summary judgment, which the court granted on February 6, 1992. This appeal ensued in which Penwell raises the following two assignments of error relating solely to her claim of wrongful discharge:

## Assignments of Error

"I. The trial court erred in granting summary judgment in favor of defendants on the grounds there was no genuine issue of material fact in dispute in spite of the fact there are genuine issues of material fact that show promissory estoppel does apply in this case and that plaintiff relied on defendants' promise and justice demands its enforcement.

"II. The trial court erred in granting summary judgment in favor of defendants on the grounds there was no genuine issue of material fact in dispute in spite of the fact there are genuine issues of material fact that show an implied contract of employment was created."

■ Summary judgment is properly granted when there is no dispute as to any material fact and after viewing the facts most favorably for the non-movant, that party cannot prevail as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273; *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 88, 585 N.E.2d 384, 389. When a party moves for summary judgment, the responding party "must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Reliance merely on the pleadings is not sufficient when the motion puts forth facts negating an essential element for which the respondent will carry the burden of proof at trial. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274–275. It is within this framework that we proceed to review Penwell's assigned errors.

■ Ohio has adhered to the position that, in the absence of a written employment contract with stated terms of duration, the employment relationship is terminable at will by either the employer or the employee. See *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418–419, 344 N.E.2d 118, 121–122. In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the Ohio Supreme Court recognized two exceptions to this general rule. First, the facts and circumstances of the case may give rise to an implied contract. *Id.*, paragraph two of the syllabus. Second, the doctrine of promissory estoppel may be raised to prevent an employer from asserting that the employment relationship was terminable at will. *Id.*, paragraph three of the syllabus. See, also, *Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 545 N.E.2d 1244, paragraphs two and three of the syllabus. We will address separately each of these exceptions, both of which Penwell raises on appeal.

### Promissory Estoppel

Under this doctrine, the focus is on the promise or representation made by the employer. The Supreme Court of Ohio has stated that:

"The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance [by the employee] actually resulted and was detrimental to the employee." *Mers, supra*, paragraph three of the syllabus.

■ From this statement two conditions are necessary in the application of promissory estoppel. First, the employee must point to some "representation" by the employer which may be reasonably interpreted as limiting the employer's ability to terminate the employee at will. Second, the employee must show that he detrimentally changed his position in reliance on that representation. Additionally, this court has set out a third condition, requiring any reliance by the employee to be justified and reasonable. *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 153, 587 N.E.2d 475, 477.

■ In the present case, there is no question that Amherst Hospital, since Penwell's hiring, has reinforced its position that all employees are terminable at will. Its personnel manual was amended as of November 15, 1988, to state that "[e]ither the hospital or employee may terminate the employment relationship at any time with or without notice or cause." However, Penwell asserts that this policy does not apply retroactively to her because of representations made by the hospital prior to its adoption. Without addressing this issue of retroactive

application, we will review those representations which Penwell contends give rise to promissory estoppel.

Penwell relies heavily on statements made to her in 1971 when she was hired. These statements were made in an entrance interview conducted by Gerald Lorence, who was the hospital administrator at that time and is now deceased. In her deposition, Penwell recalls that Lorence characterized the hospital as "family oriented" and "priding [itself] on long-term employment." Penwell claims that she was specifically told by Lorence that termination would occur only for "illegal, immoral or grossly bad acts."

Additionally, Penwell argues that Lorence's statements were reinforced by the hospital's employment manual. The manual sets out a sequence of disciplinary actions allowing for verbal and written reprimands, suspension and finally termination. The manual then categorizes offenses warranting discipline as either "critical offenses," "major offenses," "serious offenses," or "minor infractions." Minor infractions, which the manual states "should be handled * * * by verbal reprimands," include "occasional carelessness" and "minor [in]efficiencies." Because these infractions relate to job performance, Penwell contends that poor job performance itself falls within the "minor infractions" category of offenses. This being the lowest category of offenses, with verbal reprimand as the suggested action, Penwell posits that she should have received the full range of disciplinary action prior to her termination.

In *Bruno v. Struktol Co. of Am.* (1991), 62 Ohio App.3d 509, 514, 576 N.E.2d 821, 824, we held that in raising promissory estoppel, an employee cannot rely on "nebulous representations" by the employer, but must point to "specific promises." In the absence of such promises, the employee is hard pressed to demonstrate that he was justified in detrimentally relying on the employer's representations. Taking Lorence's statements as true, as we must in a summary judgment analysis, we find them to fall under the category of "nebulous representations."

In hiring a new employee, the expectation of both the employer and employee is that the relationship will be mutually beneficial. The emphasis is usually on the positive and not the negative. In explaining those infractions, such as immoral or illegal acts, which lead to automatic termination, an employer does not implicitly limit its ability to terminate an employee at will. The norm in employer-employee relations is that employees may be terminated for poor job performance. When claiming that this norm is not applicable, an employee must point to specific representations by the employer indicating that termination would not be based upon performance.

As to the employment manual, we do not find that it altered the at-will nature of the employment relationship. Even conceding that the disciplinary policies

apply to some performance-related offenses, they simply do not encompass all facets of an employee's job performance. In *Gargasz, supra,* we rejected the argument that a similar, progressive disciplinary policy mandated that a sequence of punishments be followed prior to termination. We found that it was unreasonable of the employee to expect that the most serious infractions would be handled by reprimands. Similarly, we find Penwell's position untenable. Of all the enumerated offenses, only two, "minor [in]efficiencies" and "occasional carelessness," relate to job performance. The policy makes no mention of more serious performance problems. Interpreting this manual as requiring a sequence of disciplinary actions prior to termination based on poor job performance is inherently unreasonable.

Finally, even if specific promises were made by Amherst Hospital, we fail to find any detrimental reliance by Penwell. At the time she accepted employment, she was eighteen years of age with limited job experience. Unlike the plaintiffs in *Bruno, supra,* we find no indication that Penwell would have declined Amherst Hospital's employment offer in the absence of a promise of lifetime employment. The record is devoid of any facts that Penwell passed up other employment opportunities in reliance on a promise of lifetime employment.

Accordingly, failing to find any of the elements of promissory ·estoppel, Penwell's first assignment of error is overruled.

Implied Contract

In *Mers, supra,* paragraph two of the syllabus, the court stated:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

In *Gargasz, supra,* 68 Ohio App.3d at 154, 587 N.E.2d at 478, we noted that the "legal effect of an implied contract and an express contract is identical, the only distinction being the manner in which assent is manifested." Accordingly, the party asserting an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract. With this in mind, we noted that "seldom will an employee, failing to establish promissory estoppel to alter an employment-at-will agreement, be able to establish an implied employment contract based on the same set of facts." *Id.* at 155, 587 N.E.2d at 479.

We fail to find an implied contract promising continued employment based on Penwell's entrance interview and Amherst Hospital's personnel manual.

These facts do not demonstrate mutual assent by the parties limiting or restricting the at-will nature of the employment relationship.

Therefore, Penwell's second assignment of error is also overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and COOK J., concur.