**CONDON, Appellant,**

v.

**BODY, VICKERS AND DANIELS et al., Appellees.**

[Cite as *Condon v. Body, Vickers & Daniels* (1994), 99 Ohio App.3d 12.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66542.

Decided Dec. 5, 1994.

14

*Licata & Crosby Co., L.P.A., Louis J. Licata* and *Terence K. O'Brien,* for appellant.

*Thomas P. Marotta; Squire, Sanders & Dempsey, Valeri Furst* and *Susan C. Hastings,* for appellees.

JOSEPH NAHRA, Chief Justice.

Eric Condon, plaintiff-appellant, appeals a decision from the trial court granting summary judgment in favor of Body, Vickers, Daniels et al. in Condon's action for breach of contract, infliction of emotional distress, and tortious interference with a business contract. Condon assigns four errors for our review:

"I. The trial court erred in granting appellees' motion for summary judgment with respect to Eric Condon's promissory estoppel claim, since the evidence presented to the trial court established a claim for promissory estoppel and several issues of fact existed precluding disposition by summary judgment.

"II. The trial court erred in granting appellees' motion for summary judgment with respect to Eric Condon's breach of implied contract claim, since the evidence presented to the trial court established a claim for breach of implied contract and several issues of fact existed precluding disposition by summary judgment.

"III. The trial court erred in granting appellees' motion for summary judgment with respect to Eric Condon's intentional/negligent infliction of emotional distress claim, since the evidence presented to the trial court established a claim for intentional/negligent infliction of emotional distress and issues of fact existed precluding disposition by summary judgment.

"IV. The trial court erred in granting appellees' motion to dismiss or in the alternative motion for summary judgment with respect to Eric Condon's tortious interference with contract claim, since the evidence presented to the trial court established a claim for tortious interference with contract and issues of fact existed precluding disposition by summary judgment."

After reviewing the record and the arguments of the parties, we affirm the decision of the trial court.

Eric Condon, an attorney, applied to the law firm of Body, Vickers, Daniels and Young ("the Firm") for a position as an associate. At the time he contacted the Firm, Condon was employed as a bartender at a local nightclub. Condon was granted an interview with Daniels, a partner in the Firm, who told him that he was looking for an associate to participate in a five-year training program after which he was to take the patent bar examination. After the interview, Condon was hired and began working at the Firm on November 1, 1989. His starting salary was $30,000. In February 1990, Condon contacted the Florida Department of Environmental Protection ("FDEP") to inquire about employment opportunities. The position he sought offered a salary of $19,000 per year. Condon received a response to his inquiry, but he did not accept employment with FDEP.

In January 1990, Condon had a discussion with Vickers about his job performance. Vickers told him that he was "well-liked" and was "doing excellent work." Condon also received a $6,000 raise for "doing a fine job." In June 1990, Condon told Vickers that he was contemplating buying a car. Vickers told Condon that the Firm liked him and liked his work. Vickers also told Condon that he had a job with the Firm as long as he didn't "use" the Firm or date the Firm's secretaries. Later that month, after the Firm hired two new associates, Vickers told Condon not to be concerned and that everyone was wanted at the Firm.

During his employment at the Firm, Condon had several discussions with partners about his employment. He was also told there were many aspects of patent law that he did not yet understand and would not understand until he had completed his five years of training. He was told that he was fortunate to be employed at the Firm, since he was being exposed to more complex work than associates at other firms.

On Friday, October 19, 1990, Condon got into an argument with the Firm's office manager, Ina Scaggs. Condon chastised Scaggs for engaging in a personal conversation with one of the associates. Scaggs took exception to Condon's comments and went to inform the Firm's partners about the exchange. After a conference on Monday, October 22, 1990, Vickers and Young went to Condon's office and informed him that he was fired because of the incident with Scaggs. During the conversation, Young angrily took a step toward Condon's desk and said that if he had known what was happening on Friday, he would have done something about it. Young then took another step toward Condon's desk and said that he was unsure if he could hold himself back. Young ordered Condon to prepare a list of his active projects and to describe their status. Condon prepared the list and gave it to Daniels.

On October 16, 1992, Condon initiated the instant action for breach of contract and for negligent/intentional infliction of emotional distress. He claimed that statements made to him by Firm representatives created an implied contract of employment for five years and that the Firm breached the agreement by firing him. The Firm moved for summary judgment, arguing Condon was an employee at will who could be discharged for any reason not contrary to law. They also argued that Condon had not presented sufficient evidence of his claim of intentional infliction of emotional distress.

On October 26, 1993, the trial court granted the Firm's motion for summary judgment. This appeal followed. Condon's assignments of error will be addressed in a slightly different order than they appeared in his appellate brief.

In order to determine whether the trial court erred in granting summary judgment in favor of the Firm, we must resolve several issues: whether an

implied contract arose between the parties; whether the Firm could be held liable on the basis of promissory estoppel; and whether Condon went forward with sufficient evidence in support of his claims of tortious interference with contract and negligent/intentional infliction of emotional distress.

■ Summary judgment was properly granted below if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of facts showed no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). When evaluating the motion for summary judgment, the trial court had to construe the evidence most strongly in favor of Condon. *Id.* However, Condon could not rest on his pleadings but had to produce evidence on any issue for which he would bear the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

■ In the case *sub judice*, there was no written contract between Condon and the Firm. The Firm argued that Condon was an employee at will. As such, he would be subject to discharge for any reason that was not prohibited by law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263, 483 N.E.2d 150, 153. The terms of discharge may be altered when the conduct of the parties indicates an intent to impose different conditions regarding discharge. See *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036. To determine whether such an implied agreement arose between the Firm and Condon, we must look to the surrounding facts and circumstances, the customs and course of dealing between the parties, company policy, and other relevant factors to determine the terms under which Condon was employed. *Mers,* 19 Ohio St.3d at 104, 19 OBR at 264, 483 N.E.2d at 154.

■ The evidence presented by Condon did not indicate any general policy by the Firm to hire associates for a specific five-year training program in the area of patent law. Condon made no claim that any other associate was hired under the program despite the fact that the Firm specialized in patent and trademark law. In his deposition, Condon stated he was never "guaranteed" employment at the Firm for five years.

The Firm's motion for summary judgment included an affidavit from Brian Turung, an associate hired by the Firm in June 1990. In his affidavit, Turung stated he was never told anything about a five-year training program. Turung also stated that he never received a guarantee of a definite period of employment. The Firm's senior partner, Robert Vickers, stated by affidavit that the Firm never instituted a formalized training period for associates. The affidavits indicated that associates were to expect training to prepare for careers as patent

attorneys but that there was no specified term for the training and no guarantee of employment.

There is no evidence that the Firm had a policy of offering specific terms of employment to newly hired associates. Nevertheless, Condon argues that he was promised a five-year term of employment. There is no material dispute among the parties about the comments made. The question before us is whether the statements gave rise to an implied contract of employment for five years. We find that they did not.

Condon's breach of contract claim was based on the premise that he had an implied contract of employment with the Firm. He claimed that the contract arose from the statements made to him by Firm representatives during his initial interview and in subsequent conversations. Condon argued that, during his initial interview with the Firm, Vickers told him that the Firm was looking for an associate to participate in a five-year training program. However, Condon admitted that he was never guaranteed continuous employment for five years.

 Condon also claimed that comments by the Firm members expressing satisfaction with his work performance indicated an implied contract of continued employment. We disagree.

In *Helmick v. Cincinnati Word-Processing, Inc.* (1989), 45 Ohio St.3d 131, 135–136, 543 N.E.2d 1212, 1216–1217, the Supreme Court of Ohio held that favorable comments about job performance and discussions of future career development, standing alone, do not change the status of an employment-at-will relationship. As discussed above, a review of the facts and circumstances surrounding the parties, including the Firm's customary hiring practices, does not reveal an intent to alter Condon's employment-at-will status. See *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036.

 Condon also cites a comment by Vickers that Condon had a job with the Firm as long as he did not "use the Firm or date the secretaries." This statement, which cannot reasonably be interpreted to be an exhaustive list of reasons for termination, does not amount to a promise that Condon would only be fired for just cause.

"In hiring a new employee, the expectation of both the employer and employee is that the relationship will be mutually beneficial. The emphasis is usually on the positive and not the negative. In explaining those infractions * * * which lead to automatic termination, an employer does not implicitly limit its ability to terminate an employee at will." *Penwell v. Amherst Hosp.* (1992), 84 Ohio App.3d 16, 20, 616 N.E.2d 254, 257.

■ In *Penwell*, a former hospital employee claimed that an implied contract of employment was created when the hospital administrator stated that the hospital was "family oriented," that it prided itself on long-term employment, and that she would only be terminated for "illegal, immoral or grossly bad acts." The court found that the administrator's comments did not give rise to an implied contract for continued employment because they did not demonstrate the parties' mutual assent to the limitation or restriction of the at-will employment relationship. *Id.* at 22, 616 N.E.2d at 258. See, also, *Peters v. Mansfield Screw Mach. Products* (1991), 73 Ohio App.3d 197, 596 N.E.2d 1071 (statement by supervisor that Peters would have a job as long as supervisor worked there held not to alter Peters' at-will status). Unless the evidence presented clearly manifests the intent of the parties to be bound to an employment contract, an employment agreement is presumed to be terminable at will. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 659, 612 N.E.2d 1295, 1297. We find that the statements set forth by Condon did not imply an employment contract for a specific duration. Condon's second assignment of error is without merit.

■ Having found that there was no implied contract between the parties, we now turn to the issue of whether the doctrine of promissory estoppel applies to the facts of this case. Under the doctrine of promissory estoppel, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does in fact induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co., supra,* 19 Ohio St.3d 100, 104, 19 OBR 261, 265, 483 N.E.2d 150, 154. Condon claims that he relied to his detriment on the Firm's promises of continued employment. As evidence of his reliance, he claims that he refrained from seeking other employment, he declined another job offer, he left his former job as a bartender, he purchased a car, and he failed to become familiar with areas of law other than patent law.

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers,* at paragraph three of syllabus.

■ The promise relied upon must be clear and unambiguous in its terms and the reliance must be reasonable and foreseeable. *Healey v. Republic Powdered Metals, Inc., supra,* 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036.

■ The statements allegedly relied upon by Condon did not include a specific promise of a five-year term of continued employment. Without evidence

of a specific promise, Condon was not justified in detrimentally relying on the Firm's statements.

Even if specific promises had been made, Condon has not shown that his reliance was detrimental. Condon claims that he refrained from seeking other employment while he was employed at the Firm, but he admits contacting the Florida Department of Environmental Protection ("FDEP") to ask about a job. Although he gave up his bartender job to work at the Firm, there is no evidence that the Firm induced him to do so. Condon contacted the Firm seeking a job; therefore, it is reasonable that he had already decided to give up his bartender job in order to accept employment at the Firm. With respect to his decision not to accept employment at FDEP, there is no evidence in the record indicating that the Firm knew Condon was offered a job there.[1] There is no evidence that the Firm knew or should have known that Condon would refuse the offer of employment. Contrary to Condon's argument, we find it significant that the job offered to Condon at FDEP had a salary of only $19,000 as compared to the $30,000 the Firm was paying him at the time. The salary difference indicates that Condon's decision not to accept the offer did not work to his detriment, but had the benefit of allowing him to earn more money. We find that Condon did not go forward with sufficient evidence to support his claim of promissory estoppel. Consequently, his first assignment of error is overruled.

The next issue for review is whether Condon went forward with sufficient evidence in support of his claim for tortious infliction of emotional distress. In order for an employee to prevail on a claim against his employer for tortious infliction of emotional distress, the employee must show that the employer intentionally, recklessly, or negligently caused the employee severe emotional distress by extreme and outrageous conduct. *Kurtz v. Harcourt Brace Jovanovich, Inc.* (1990), 69 Ohio App.3d 267, 273, 590 N.E.2d 772, 776. The plaintiff need not have suffered a contemporaneous physical injury, but his distress must be severe and debilitating. *Yackshaw v. John Carroll Univ. Bd. of Trustees* (1993), 89 Ohio App.3d 237, 244, 624 N.E.2d 225, 229.

We find that Condon did not go forward with enough evidence to support his claims of tortious infliction of emotional distress. Condon submitted the affidavit of Dr. John Lowenfeld, which described his treatment of Condon for depression, weight loss, and other problems that included several nights spent at a psychiatric hospital. While recognizing that Condon's distress as verified by Dr. Lowenfeld was serious, we cannot find that the Firm's conduct was outra-

---

1. Senior attorney Gary Smallridge of FDEP stated in an affidavit that he did not make an offer of employment to Condon. However, for purposes of summary judgment, we accept Condon's version of the facts as true.

geous and extreme. As discussed above, Condon was an employee at will who could be fired for any reason not prohibited by law. The Firm's decision to fire Condon was merely an exercise of the Firm's legal rights, and Condon cannot recover for any emotional distress which results from the Firm's action. See *Uebelacker v. Cincom Sys., Inc.* (1988), 48 Ohio App.3d 268, 277, 549 N.E.2d 1210, 1220.

■ We now turn to Condon's claim of tortious interference with a business contract. Tortious interference with a business contract occurs when one party to a contract is induced to breach the contract by the malicious acts of a third person *who is not a party to the contract. Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111, 116.

■ In *Erebia v. Chrysler Plastic Products Corp.* (C.A.6, 1989), 891 F.2d 1212, 1216, the court held that the personnel manager of a plant where Erebia sought employment was not a third party who could interfere with Erebia's prospective employment with that employer. In the instant case, Ina Scaggs was employed as the office manager of the Firm. According to the rule in *Erebia,* Scaggs was not a third party subject to liability for tortiously interfering with a contract to which the Firm was a party.

■ Additionally, Condon did not go forward with evidence of a causal connection between Scaggs' comments and his discharge. He admitted that he was unsure what Scaggs said to the partners about the incident. He has not shown that Scaggs told the partners about the altercation with the intent of getting him fired or that Scaggs actively urged the partners to fire him. Her alleged comment that he should go back to his office if he knew what was good for him does not suffice to show that Scaggs intended for the Firm to discharge Condon. Condon's fourth assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY and WEAVER, JJ., concur.