JOURNAL ENTRY and OPINION
{¶ 1} Randall Stickler appeals from a Cuyahoga County Court of Common Pleas grant of appellee KeyCorp's summary judgment motion which stemmed from Stickler's wrongful discharge complaint. Stickler assigns the following as errors for our review:
 {¶ 2} "The trial court erred in granting summary judgment todefendants-appellees on plaintiff-appellant's promissory estoppelclaim.
 {¶ 3} "The trial court erred in granting summary judgment todefendants-appellees on plaintiff-appellant's breach of implied contractclaim."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 5} KeyCorp is organized into multiple lines of business, including Key Commercial Real Estate. During the relevant time period, George Emmons headed this section and supervised Stickler.
 {¶ 6} KeyCorp divided its Commercial Real Estate arm into sections termed Conduit and Agency, descriptive names referring to their respective business concerns. Stickler headed the Agency section at the time of his termination.
 {¶ 7} While Stickler headed Agency, KeyCorp became interested in acquiring Newport Mortgage (Newport), a Dallas, Texas company in the agency business. KeyCorp's interest was based on Newport's broader line of agency products and the expertise of certain employees, namely Jeff Juster, Newport's president. Stickler and a member of KeyCorp's Mergers and Acquisitions Department lead the effort to acquire Newport.
 {¶ 8} According to Stickler, Emmons assured him that the Newport acquisition was "his" project, and that he would be the Senior Executive of Agency's financial business upon consummation. Based on Emmons's alleged assurances, Stickler removed himself from consideration to succeed KeyCorp's incumbent Executive Vice President and Chief Credit Officer for Commercial Real Estate.
 {¶ 9} The acquisition of Newport and Juster would result in Juster and Stickler sharing identical duties if KeyCorp retained both. On June 19, 2000, Emmons informed Stickler that KeyCorp chose Juster to head Agency and would terminate his employment upon the acquisition of Newport. On August 2, 2000, Emmons informed Stickler that the acquisition was complete and gave him two-months notice of termination. Stickler's last day of employment with KeyCorp was October 3, 2000.
 {¶ 10} On November 13, 2000, Stickler sued KeyCorp for wrongful discharge based upon theories of promissory estoppel and breach of implied contract. Stickler asserted that KeyCorp's alleged promises regarding his opportunity to head Agency, pending acquisition of Newport, transformed his employment status from at-will to contracted.
 {¶ 11} KeyCorp moved for summary judgment arguing Stickler failed to demonstrate any facts which altered his at-will status. On December 13, 2001, the trial court granted KeyCorp's motion for summary judgment, and this appeal followed.
 {¶ 12} We consider an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[3]
 {¶ 13} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] The movant may satisfy this burden with or without supporting affidavits, and must "point to evidentiary materials of the type listed in Civ.R. 56(E)."[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[6] In satisfying its burden, the non-movant "may not rest upon the mere allegations or denials of his pleadings, but his response by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."[7]
 {¶ 14} Rather than accepting either party's allegations as true, or interpreting divergent factual representations as genuine issues of material fact, we review the entire record and determine whether each party met their respective summary judgment burdens.
 {¶ 15} Under well-established Ohio law, a contract for employment is considered indefinite and at the wills of both the employee and the employer.[8] Thus, absent a specific exception to the at-will doctrine created by law, either the employee or the employer may terminate the employment relationship at any time, with or without good cause.[9]
 {¶ 16} In Mers v. Dispatch Printing Co.,[10] the Ohio Supreme Court carved two exceptions: first, where promissory estoppel applies; and second, where the employer altered the terms of at-will employment, creating either an express or implied contract. Stickler claims both exceptions on appeal.
 {¶ 17} In his first assigned error, Stickler argues the trial court erred in granting KeyCorp's motion for summary judgment because promissory estoppel applies. We disagree.
 {¶ 18} Promissory estoppel is a quasi-contractual concept where a court in equity seeks to prevent injustice by effectively creating a contract where none existed. In Mers, the supreme court held:
 {¶ 19} "The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."[11]
 {¶ 20} Accordingly, the elements necessary to trigger promissory estoppel are: (1) a clear, unambiguous promise; (2) reasonable and foreseeable reliance upon the promise by the person to whom the promise is made; and (3) resulting injury to the party who relied on the promise.[12]
 {¶ 21} Where an employee invokes promissory estoppel following a promise of future benefit or opportunity, Wing v. Anchor Media, Ltd. ofTexas[13] controls. In Wing, the employer promised Charles Wing, an at-will employee, the future right to purchase equity in his employer contingent upon it completing a new financing package. However, the employer terminated Wing before this condition precedent accrued. Wing sued his former employer claiming, inter alia, its promise of a future opportunity triggered promissory estoppel and thus exempted him from at-will status. The supreme court decided Wing failed to establish all necessary promissory estoppel elements. It held, "A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment at-will."[14]
 {¶ 22} Stickler relies upon our decision in Blatnicky v.Sheller-Globe Corp.[15] in which this court distinguished Wing's
"specific promise of continued employment" mandate. In Blatnicky, we stated:
 {¶ 23} "Sheller-Globe, citing to Wing, argues that Blatnicky's claim for promissory estoppel fails because Blatnicky acknowledged that Sheller-Globe made no specific promises of continued employment. Wing,
however, is inapplicable. There the employer promised the employee the opportunity to purchase equity in the employer at some time in the future. The employer then discharged the employee before he had an opportunity to do so. Wing, therefore, applies where an employee is discharged before promised benefits accrue. Here, all contingencies for Blatnicky's being made president were removed several months before Sheller-Globe discharged him."[16]
 {¶ 24} Although Stickler failed to establish a genuine issue of material fact as to whether KeyCorp promised him continued employment for a definite period of time, a genuine issue of material fact exists as to whether KeyCorp promised him continued employment pending acquisition of Newport and whether such contingency accrued prior to his dismissal. If KeyCorp terminated Stickler after acquiring Newport, then the condition precedent to KeyCorp's alleged promise was realized and the promised benefit accrued. As per Blatnicky, this would satisfy the first element of promissory estoppel.
 {¶ 25} Nonetheless, Stickler failed to establish a genuine issue of material fact as to whether he reasonably relied on a KeyCorp promise or suffered a correlative detriment.
 {¶ 26} First, Stickler's reliance on any KeyCorp promise of promotion or continued employment became patently unreasonable when Emmons informed him that KeyCorp would terminate his employment upon acquiring Newport. The record unequivocally shows Stickler knew his fate several weeks before KeyCorp acquired Newport. Accordingly, even though a genuine issue of material fact exists as to whether KeyCorp promised Stickler continued employment, Stickler's reliance upon any such promise was unreasonable.
 {¶ 27} Second, Stickler failed to demonstrate he suffered detriment. Detrimental reliance does not exist where the promisee merely refrains from seeking other employment unless he rejects an offer.[17]
Here, Stickler refrained from seeking other employment by removing his name from consideration for another position; however, he did not receive an offer which he could reject. Accordingly, Stickler's perceived detriment is too indefinite for us to consider for purpose of promissory estoppel.[18]
 {¶ 28} KeyCorp satisfied its summary judgment burden of establishing no genuine issue of material fact exists as to whether it altered Stickler's at-will status and its entitlement to judgment as a matter of law. Stickler failed to respond with any facts demonstrating he reasonably and detrimentally relied on a KeyCorp promise of continued employment. Consequently, Stickler failed in his reciprocal duty to establish the existence a genuine issue of material fact as to the applicability of promissory estoppel. Accordingly, Stickler's first assigned error is without merit.
 {¶ 29} In his second assigned error, Stickler argues the trial court erred in granting KeyCorp's motion for summary judgment because he believes a genuine question of fact exists as to whether an implied contract for his services existed. We disagree.
 {¶ 30} A party asserting an implied contract's existence carries the heavy burden of establishing each and every contract formation element, including a meeting of the minds.[19] Specifically, we will not find an implied employment contract exists unless both parties assent to limiting the at-will employment doctrine.[20] In determining whether such a mutually agreeable limitation occurred, a reviewing court may consider "the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, * * *."[21]
 {¶ 31} In support of its motion for summary judgment, KeyCorp asserted no meeting of the minds occurred. It presented affidavits and depositions in which KeyCorp employees denied entering a contractual relationship with Stickler, guaranteeing Stickler a definite term of employment, or representing to Stickler that he was anything other than an at-will employee. KeyCorp asserted a general policy by which all its employees, including Stickler, were at-will. Further, KeyCorp cited to Stickler's deposition in which he could not temporally define his KeyCorp employment.
 {¶ 32} Stickler countered by arguing KeyCorp guaranteed his employment by calling KeyCorp's acquisition of Newport "his" project, promising he would head Agency's financial business after KeyCorp acquired Newport, and signing some employees from newly acquired companies to three-year contracts. We hold these arguments are insufficient as a matter of law to establish an implied contract.
 {¶ 33} First, terming KeyCorp's acquisition of Newport as Stickler's project is nothing more than an assertion that Stickler held a degree of autonomy in acting on KeyCorp's behalf during the course of his regular employment. All employees, in the course of their employment, necessarily act on their employer's behalf. Consequently, this employment relationship is no different than any other. Regardless of how much power KeyCorp vested in Stickler to acquire Newport, or how it termed the project, the acquisition remained KeyCorp's, not Stickler's. We see no legal basis by which we may infer KeyCorp interpreted Stickler's efforts as entitlement to continued employment.
 {¶ 34} Second, statements promising advancement opportunities do not create an implied contract.[22] This court has consistently maintained this position, including in Lake v. Wolff Brothers Supply,Inc.[23] where we held no implied contract existed even though the employer promised the employee career advancement and permanence with the company.
 {¶ 35} Third, regardless of whether KeyCorp awarded three-year contracts to employees hired from newly acquired companies, Stickler lacked specific cause to believe this alleged policy limited his at-will status. Stickler was not an employee of a newly acquired company; he was a long-termed KeyCorp employee. Stickler points to no fact indicating KeyCorp's alleged practice of contracting with employees from newly acquired company's limited his at-will status.
 {¶ 36} Further, Stickler could not define the agreed upon duration of his employment with KeyCorp. In deposition he stated KeyCorp never committed to a definite term; he simply assumed his term was three years. By definition, a contractual employment relationship is definite while an at-will relationship is indefinite. Stickler finds no definite term for his employment with KeyCorp yet argues we must find a contractual relationship exists. Inclusive of any other argument Stickler has made, his position is simply untenable.
 {¶ 37} Because Stickler did not point to any facts which establish KeyCorp understood his relationship to be contractual, and because both parties acknowledged no definite term of employment existed between them, Stickler failed to meet his summary judgment burden of demonstrating the existence of a genuine issue of material fact. Accordingly, the trial court did not err by granting KeyCorp's motion for summary judgment on grounds that an implied contract did not exist between Stickler and KeyCorp, and Stickler's second assigned error is without merit.
Judgment affirmed.
TERRENCE O'DONNELL, J., CONCURS; DIANE KARPINSKI, J., DISSENTS, (SEE ATTACHED DISSENTING OPINION.
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id., citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 292.
[6] Id. at 293.
[7] Civ.R. 56(E); See Dresher.
[8] See, e.g., LaFrance v. Internatl. Brotherhood (1923),108 Ohio St. 61; Henkel v. Educ. Research Council (1976),45 Ohio St.2d 249; Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100.
[9] Id.; See, also, Wright v. Honda of America Mfg., Inc.,73 Ohio St.3d 571, 1995-Ohio-114.
[10] (1985), 19 Ohio St.3d 100.
[11] Mers at paragraph three of the syllabus.
[12] Id.; Carter v. Warner Interior, Inc. (Nov. 6, 1997), Cuyahoga App. No. 71797, citing Weiper v. W.A. Hill Assoc. (1995),104 Ohio App.3d 250, 260.
[13] (1991), 59 Ohio St.3d 108.
[14] Id. at paragraph two of the syllabus.
[15] (June 23, 1994), Cuyahoga App. No. 65516.
[16] Id. at 6-7. (citations omitted).
[17] Onysko v. Cleveland Public Radio (July 27, 2000), Cuyahoga App. No. 76484, citing Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 17-18;Eagleye v. TRW, Inc. (Feb. 17, 1994), Cuyahoga App. No. 64662 at 4.
[18] See Talley v. Teamsters, Local No. 377 (1976), 48 Ohio St.2d 142,146.
[19] Corradi v. Soclof (May 25, 1995), Cuyahoga App. No. 67586. (citations omitted).
[20] Condon v. Body, Vickers and Daniels (1994), 99 Ohio App.3d 12; See, also, Penwell v. Amherst Hosp. (1992), 84 Ohio App.3d 16; Shaw v.J. Pollock Co. (1992), 82 Ohio App.3d 656.
[21] Mers at 104.
[22] Corradi, citing Helmick v. Cincinnati Word Processing, Inc.
(1989), 45 Ohio St.3d 131.
[23] (Nov. 10, 1993), Cuyahoga App. No. 63959.