JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Wesley Williams appeals from the order of the trial court that awarded summary judgment to defendant Case Western Reserve University ("Case") in Williams' action for breach of an employment agreement. For the reasons set forth below, we reverse and remand for further proceedings consistent with this opinion.
 {¶ 2} Drs. Charles Hoppel and Edward Lesnefsky of Case's School of Medicine were awarded a National Institute of Aging/National Institute of Health ("NIH") grant to investigate mechanisms associated with age-related heart injury. In 2001, Dr. Lesnefsky invited plaintiff to interview for a non-faculty post-doctoral research position available in connection with this research project. This invitation indicated that experience in certain aspects of the project was helpful but was not required.
 {¶ 3} Plaintiff subsequently informed Case that he would not accept the research assistant position but would take the non-tenured job of "Senior Instructor," in light of his experience. On November 1, 2001, Dr. Richard Walsh, Chairman of the School of Medicine, offered plaintiff the Senior Instructor position for a "three-year commitment." The letter additionally stated that "At the end of the second year, Drs. Lesnefsky and Hoppel will review your progress in research and teaching with you in regard to potential promotion to Assistant Professor." The position involved designing some of the tests to be performed, and executing other experiments which had already been designed.
 {¶ 4} It is undisputed that a Senior Instructor's appointment may be "non-renewed" for any reason or no reason but may be entitled to up to one year notice of such action.
 {¶ 5} Plaintiff began working at Case in May 2002. In June 2002, the researchers requested a renewal of the NIH grant and plaintiff assisted with the renewal application. Upon its review of the application, the NIH notified Dr. Hoppel that the proposal suffered from a lack of clarity, there was no specific description of the experiments, no discussion of control groups, and a redundancy within its aims. By December 2002, the NIH notified Case the research grant was not renewed. Plaintiff's salary was then funded by other sources at the medical school. By January 2003, Lesnefsky contacted Richard Jenkins of the grants and accounting division regarding the date by which plaintiff would have to be notified that he would not be appointed, in order for it to be effective by June 2003. In response, Jenkins wrote that the notice would have had to have been sent by December 31, 2002, but that "lack of funding is a legitimate reason to issue someone a terminal appointment letter."
 {¶ 6} On February 3, 2003, Dr. Walsh notified plaintiff that his appointment would end in June 2004. Later, on February 27, 2003, Dr. Lesnefsky notified plaintiff as follows:
 {¶ 7} ""First, as you know, the competing renewal of the [project] * * * was not funded. The [program] Investigators are working toward a planned resubmission for June 2003. Thus, work to position our project for succesful refunding is a top priority. This, of course, involves progress in laboratoy bench research, formulating a response to reviewer critiques, and revision of the research proposal. The current status of your progress in each of these aspects is addressed below.
 {¶ 8} "First, your productivity in laboratory bench research has been substantially below that expected of a senior instructor. You have neither established a new line of work nor made significant contributions to the ongoing work of our project. * * * Unfortunately, none of the the data used by our project at the site visit for renewal in December 2002 was generated by you, seven months following your joining our laboratory. * * * [Y]our presentation at laboratory conferences and in meetings with Dr. Hoppel and me demonstrates a lack of appreciation of our laboratory's key concepts in the approach to lipid analysis. This has occurred despite the opportunity to read the published papers, laboratory protocols, and current unpublished experimental data. * * *
 {¶ 9} "* * * Performance has been substantially below the level of a `responsible co-investigator of the ischemic aging heart project,' the position for which you were hired."
 {¶ 10} In a response dated May 5, 2003, plaintiff indicated that he did not accept Lesnefsky's "assessment as an honest evaluation of [his] performance." He further wrote that there was no clear focus for integrating him into the research efforts of the laboratory as he had pursued studies in proteomics and myocyte culture techniques and mRNA isolation techniques at Lesnefsky's behest but these areas were then not pursued by Lesnefsky. He noted that he developed a ph-related hypothesis and conducted experiments but was then redirected by Lesnefsky. He also noted contributions he had made with regard to the project. In a June 2003 retort, Lesnefsky continued to complain that plaintiff had difficulties in understanding experimental design and executing technical protocols.
 {¶ 11} Plaintiff responded that Lesnefsky had deviated from the planned course of experiments, did not attend important meetings and repeatedly redirected plaintiff's efforts.
 {¶ 12} In September 2003 Case learned that the grant was subsequently reinstated for 2004-2005 but a portion of the work that had been assigned to plaintiff was now excluded from the re-application process.
 {¶ 13} Case's School of Dentistry subsequently gave plaintiff an adjunct faculty appointment and he received a research grant for $30,000 during what would have been the third year of his term as a Senior Instructor.
 {¶ 14} On June 29, 2004, plaintiff filed a complaint[1]
against Case for breach of a three-year employment contract, breach of implied contract, promissory estoppel and declaratory judgment. Case denied liability and moved for summary judgment, asserting that plaintiff was terminated for poor performance and not due to lack of funding.
 {¶ 15} In support of this motion, Case submitted evidence that plaintiff was never actually able to design and/or run any of the experiments assigned to him and was never able to obtain any usable data.
 {¶ 16} Case also submitted evidence that although plaintiff had worked at the NIH, his curriculum vitae does not mention that he did so as a "Guest Scientist" who was not employed by that entity and did not work on NIH research experiments. Another position, identified with the title "Senior Scientist" was in fact largely administrative.
 {¶ 17} In opposition, plaintiff asserted that the agreement provided that he was guaranteed employment for three years and the agreement did not contain a provision describing any standards of performance or a performance obligation. He maintained that he was improperly terminated due to the non-renewal of the NIH grant, not poor performance, and he noted that the documentation that pertains to his performance was prepared after he had been notified that his commitment would be ending. Conversely, less than one month after learning of the loss of NIH funding, Lesnefsky contacted Robert Jenkins to determine Williams' appointment date and deadline by which a "termination appointment letter" was to be sent in order for plaintiff to be terminated by June 2003. Jenkins replied that a letter would have had to have been sent to plaintiff by December 31, 2002, in order for him to be terminated as of this date, and goes on to state that "lack of funding is a legitimate reason to issue someone a terminal appointment letter."
 {¶ 18} Plaintiff acknowledged that he was unfamiliar with many of the techniques required to conduct the experiments but he stated that it is customary for researchers to have one year to learn what is required and he determined that he could meet with others to learn how to perform the required techniques. Plaintiff testified in deposition that, when he arrived, he was not given any formalized or final descriptions of the experiments and was immediately asked to work on the grant renewal application.
 {¶ 19} He also submitted evidence that his failure to obtain usable data was the result of significant flaws in the research program itself, which were identified by the NIH when the research grant was not renewed. Some of the experiments which he was to perform had design flaws and were eventually abandoned. Dr. Hoppel admitted that the protocols were deficient and that it was the fault of all of the doctors. "All" of their fault. Plaintiff's evidence also indicated that he was repeatedly switched from one project to the next as the focus and projects shifted. He was also asked to research areas which were not part of the grant. He obtained data but it was ignored because it was contrary to expected results or disregarded as the research again changed direction.
 {¶ 20} Regarding the inaccuracies on his curriculum vitae, plaintiff noted that Dr. Hoppel deposed that plaintiff had not misrepresented himself.
 {¶ 21} The trial court granted Case's motion for summary judgment and plaintiff now appeals, assigning four interrelated assignments of error which state:
 {¶ 22} "The trial court erred as a matter of law when it granted the University's motion for summary judgment and ignored the stated terms of the employment contract."
 {¶ 23} "The trial court erred by disregarding the explicit terms of the employment contract."
 {¶ 24} "The trial court erred when it presumably found an implied condition regarding performance."
 {¶ 25} As an initial matter, we note that where the parties have entered into a written employment contract with a stated term of duration, the employee may not be terminated at will, but may be terminated only for "just cause." See Henkel v.Educational Research Council (1976), 45 Ohio St.2d 249, 255,344 N.E.2d 118, 121-122; McElroy v. Snider Co. (June 29, 2000), Cuyahoga App. No. 76418. "Just cause" is shown where the employee has engaged either in neglect of duty, insubordination, or disloyalty. Id. Moreover, the employee may be terminated for poor performance even if he or she has a contract for a specific term. See Penwell v. Amherst Hospital (1992), 84 Ohio App.3d 16,616 N.E.2d 254, wherein the court explained as follows:
 {¶ 26} "In explaining those infractions, such as immoral or illegal acts, which lead to automatic termination, an employer does not implicitly limit its ability to terminate an employee at will. The norm in employer-employee relations is that employees may be terminated for poor job performance. When claiming that this norm is not applicable, an employee must point to specific representations by the employer indicating that termination would not be based upon performance."
 {¶ 27} Accord Alloway v. WLW, Inc. (June 21, 2000), Lorain App. No. 98CA007192.
 {¶ 28} In accordance with the foregoing, an employer has implied authority to terminate an employee for poor performance, despite any agreement as to a specific term of employment. Accordingly, plaintiff's first, second and third assignments of error are without merit.
 {¶ 29} Plaintiff's fourth assignment of error states:
 {¶ 30} "The trial court erred in presuming deficient performance even if a good cause standard is implied within the contract."
 {¶ 31} We review the grant of summary judgment de novo using the same standards as the trial court. Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108,652 N.E.2d 684. A trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 {¶ 32} The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. Id., citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47.
 {¶ 33} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Civ.R. 56(E); Harless v. Willis Day WarehousingCo., supra. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact for trial. Vahila v. Hall,
supra. Summary judgment, if appropriate, shall be entered against the non-moving party. Jackson v. Alert Fire Safety Equip.,Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
 {¶ 34} In this matter, Case asserted that "[t]he question of why an alleged senior research scientist who had been employed at NIH was unable to perform assigned experiments was answered during discovery." We do not agree. Our review of the record indicates that there are genuine issues of material fact as to why plaintiff was discharged. An initial factual question is present as to whether plaintiff was terminated due to the loss of the NIH funding as the notice of termination followed the loss of funding and all documents related to performance are subsequent to this notice. It is also clear that Lesnefsky contacted Jenkins about terminating plaintiff immediately after the funding was not renewed and Jenkins' response indicates that "lack of funding is a legitimate reason to issue someone a terminal appointment letter."
 {¶ 35} A second factual question is whether plaintiff's performance was deficient and whether Case therefore had just cause for terminating him. We cannot say that Case demonstrated an absence of genuine issues of fact as to plaintiff's performance as plaintiff sharply disputed this contention and presented voluminous evidence to indicate that he was not given formal descriptions of the experiments, he had to participate in the grant renewal application, there were significant flaws with the research program which were identified by the NIH, many of the experiments had design flaws, experiments were abandoned as the focus repeatedly shifted, and he was required to work in areas which were not part of the grant. These factual issues preclude us from accepting the trial court's determination that Case was entitled to judgment as a matter of law. Summary judgment was improper in this matter. We therefore reverse and remand for further proceedings consistent with this opinion.
 {¶ 36} This assignment of error is well-taken.
Reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Blackmon, J., Concur.
[1] On this same date, plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction to bar his termination from the university during the three-year term of the employment agreement. The trial court denied the motion in its entirety, however.
The parties do not argue that plaintiff was required to exhaust administrative remedies and we make no holding as to the applicability or the waiver of this particular defense herein.